IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

SPIRIT OF THE EAST, LLC, a Florida limited liability company,

    Plaintiff,

CASE NO.:

v.

YALE PRODUCTS, INC., a Florida for-profit corporation, and ALAN LEIGH, an individual,

    Defendants.

_____/

## **MOTION TO VACATE ARBITRATION AWARD**

Plaintiff, SPIRIT OF THE EAST, LLC, ("SPIRIT") moves this Court to vacate the Arbitration Award, (the "Award") was issued in *Spirit of the East, LLC v. Yale Products, Inc. and Alan Leigh*, Case No. 01-21-0004-2363 in favor of YALE PRODUCTS, INC. ("YP") and ALAN LEIGH ("LEIGH") (collectively "Defendants"), and contrary to the Federal Arbitration Act ("FAA"), 9 U.S.C. §10, and the Florida Arbitration Code, Section 682.13, Florida Statutes because the Award consummates and compels the commission of an illegal act, and in support states as follows:

### **INTRODUCTION**

1.    Spirit filed a petition for arbitration (the "Petition") (attached hereto as Exhibit "A") seeking to determine that the closing and sale of a sailing Vessel misrepresented to be 100' feet in

length was never consummated, never closed, due to a plethora of issues, and that no title of the Vessel passed. [1]

2. An Arbitration was conducted on January 19 and 20, 2022. The Award (attached hereto as Exhibit "B") entered after the Arbitration hearings must be vacated because the Arbitrator overstepped his authority pursuant to the American Arbitration Association ("AAA") Rules, 9 U.S.C. §10, and the Florida Arbitration Code, and Section 682.13, Florida Statutes.

3. The Award should be vacated because the Arbitrator exceeded his authority by granting the Award to consummate a crime or mandate that SPIRIT participate in a crime.

4. The sale of a Vessel without a certificate of title is a crime in Florida, a second-degree misdemeanor. Fla. Stat. §328.21.

5. The Award consummates a crime. Namely, the Award legitimizes and condones the sale of the Vessel without a certificate of title.

6. The Award also mandates that SPIRIT commit a crime. Namely, the award requires SPIRIT to operate, use, or store the Vessel on open waters without a hull identification number, which is a crime in Florida, punishable as a second-degree misdemeanor. Fla. Stat. §§328.07, 328.19.

7. The Award acknowledges the Vessel has no hull number and the Petition alleges the Vessel was stored on open waters. The effect of the Award is that SPIRIT is engaged as in a second-degree misdemeanor by allowing the Vessel to be stored on open waters without a hull identification number. SPIRIT could not have moved the Vessel upon receipt of the Award because operation of the Vessel on open waters without a hull identification number is also a crime.

---

[1] There were numerous misrepresentations by the Seller in the Purchase and Sale Agreement. One of the many misrepresentations is that the vessel was identified as being 100' but it was really approximately 87' in length.

8. Section 21 of the PSA ("Arbitration Clause"), in addition to allowing the parties to seek vacatur by the courts, allows the parties to "refer questions of law."

9. Under Arbitration Clause, the parties narrowly defined the scope of the arbitrator's power and contracted for a review of questions of law by the courts.

10. SPIRIT refers the questions of law contained herein to this Court pursuant to the Arbitration Clause.

11. Additionally, $220,000.00 was being held in escrow by Robert Forman, Esq.

12. The Arbitrator also exceeded his authority by ordering the $220,000.00 be released to Yale Products, Inc. when no petition seeking release of any funds was filed by YP, ALAN LEIGH or any other party to the arbitration. Specifically, the Award grants the Defendants affirmative relief where none was pleaded.

13. SPIRIT moves to vacate the Award pursuant to 9 U.S.C. §10 and the Florida Arbitration Code, Section 682.13, Florida Statutes, because the Court cannot participate or mandate a criminal act, particularly when the parties contracted to refer questions of law, because it consummates a crime (i.e. the sale without a certificate of title) and mandates that SPIRIT commit a crime in the future (i.e. the use, operation or storage of the vessel on open waters without a hull number) and the AWARD exceeded the Arbitrator's powers.

## PARTIES, JURISDICTION, AND VENUE

14. The Plaintiff, SPIRIT OF THE EAST, LLC, at all times material hereto is a limited liability company, incorporated in the state Delaware, and operated by managing member IAN PRIDER ("PRIDER").

15. Defendant, YALE PRODUCTS, INC., at all times material hereto is a for-profit corporation, incorporated in Florida.

16. Defendant, ALAN LEIGH, at all times material hereto, was and is the sole officer and shareholder of YP.

17. This Court has subject matter jurisdiction based on diversity of citizenship and the amount in controversy exceeds $75,000.00.

18. Venue is proper in the Southern District of Florida pursuant to 9 U.S.C. §9.

## FACTUAL AND PROCEDURAL BACKGROUND

19. This action is based upon the illegal sale of an approximately 87' vessel, (the "Vessel"), which was misrepresented as being 100', named the Spirit of the East, built in 2006 in Turkey, by Aegean Yachts.

20. On or about March 5, 2019, YP purchased the Vessel from a Court Ordered Sheriff's sale for Five Thousand Dollars, $5,000.00.

21. YP's purchase was by way of a lien against the Vessel.

22. YP docked the Vessel, since January 2017 through current, at 738 NE 20th Avenue, Fort Lauderdale, Florida, 33304.

23. YP advertised the Vessel for sale on numerous platforms, and attracted potential buyer, PRIDER.

24. PRIDER, on behalf of SPIRIT, began negotiations with YP in anticipation of purchase of the Vessel.

25. On or about April 5, 2021, PRIDER, on behalf of SPIRIT, emailed HARRY WARTICOVSCHI, ("WARTICOVSCHI"), a detailed outline including but not limited to (1) inaccuracies in the Vessel description; (2) registration and certificate of title issues; and (3) restraints upon moving the Vessel. A true and accurate copy of the April 5, 2021 Email, is attached hereto as Exhibit "C".

26. On or about April 6, 2021, LEIGH and PRIDER orally agreed, among many things, that the transaction to purchase the Vessel for the purchase price of $220,000.00 would close on May 10, 2021.

27. Closing on the Vessel was contingent upon YP (1) obtaining documentation for the Vessel in the USA; (2) providing clear title; (3) removing the Malta mortgage; and (4) assisting PRIDER in preparation and moving the Vessel to a new location.

28. On or about April 17, 2021, SPIRIT AND YP entered into a written Purchase Agreement, (the "Contract"), with a May 10, 2021 closing date. A true and accurate copy of the Contract is attached hereto as Exhibit "D".

29. Paragraph 18 of the Contract required that,

> The Vessel is sold free and clear of all debts, claims, liens and encumbrances of any kind whatsoever. The Seller warrants, and will defend that the Seller has good and marketable title to the Vessel…and will deliver to the Buyer…all documents necessary to transfer title to the Vessel…to enable the Buyer to document or register the Vessel. The Sale shall be deemed closed when (a) the Buyer has paid the full purchase price, in cleared funds, to the Selling Broker's escrow account, and the Selling Broker is in a position to deliver the purchase price, less brokerage fees, to the Seller, and (b) **the Buyer or the Selling Broker has received the title documents from the Seller, properly executed for transfer and delivery to the Buyer.** (emphasis added).

30. The Contract included an arbitration clause in paragraph 21, writing that,

> The parties shall refer to arbitration any dispute relating to this Agreement, including but not limited to, its interpretation, breach, or existence. The Arbitration shall be conducted by the American Arbitration Association in accordance with its rules then in force and held in Fort Lauderdale, Florida unless the Buyer and the Seller agree on another location…. The arbitrator(s) shall award attorneys fees to the prevailing party and fix and apportion all other arbitration costs…. Arbitration shall be the sole and exclusive forum for resolving any dispute relating to this Agreement and neither party may resort to any court **except to** compel arbitration, **refer**

**questions of law**, or confirm, **vacate**, **modify**, or **enforce the arbitration award**. (emphasis added)

31. In various telephone conversations between LEIGH and PRIDER, occurring between April 17, 2021, and May 4, 2021, YP and SPIRIT agreed that in anticipation of the closing of the Contract:

   a. PRIDER would travel to Fort Lauderdale on May 5, 2021;

   b. PRIDER and LEIGH would meet on May 6, 2021 through May 10, 2021 to prepare the Vessel to be moved to Cracker Boy Boat Works;

   c. PRIDER and LEIGH would motor/sail the Vessel to Palm Beach on May 10, 2021;

   d. PRIDER and LEIGH would anchor in Palm Beach overnight then arrive at Cracker Boy Boat Works for removal of the Vessel from the water at or about 9:00 a.m. on May 11, 2021; and

   e. LEIGH's assistance with the Vessel would be complete upon the Vessel's arrival at Cracker Boy Boat Works.

32. On May 6, 2021, PRIDER did a walk-through to inspect the Vessel, finding that the Vessel: (1) did not have a name on either its port or starboard sides, (2) did not have a name on its stern, (3) could not be identified by a name on its exterior, (4) did not have a hull number on its port or starboard sides; and (5) had recent damage to its starboard side near the side boarding platform.

33. No Bill of Sale was executed, nor funds released during PRIDER's May 6, 2021 inspection.

34. Section 328.07, Florida Statutes, requires the display of a valid hull identification number for the operation, use, or storage of a vessel. Fla. Stat. §328.07.

6

35. YP repudiated the Contract by:

    a. LEIGH's failure to assist moving the Vessel to Cracker Boy Boat Works;

    b. Failure to disclose, repair, or make price adjustment in response to substantial damage to the Vessel (Ex. C ¶20);

    c. Failure to request, seek, otherwise obtain the Title documents, (Ex. C ¶18), specifically:

        1. US Documentation for the Vessel;

        2. Florida title to the Vessel;

        3. Assignment of the Florida title;

        4. Evidence of Formal Entry of the Vessel by the US Customs and Border Protection and the payment of duty thereto (Form 7501);

        5. **A valid Hull identification Number properly affixed**;

        6. Discharge of the outstanding mortgage;

    The name of the Vessel and hailing port on the stern of the Vessel;

        7. Admeasurement of the Vessel. [2]

36. At no time relevant hereto did YP have any certificate of title, or registration on the Vessel, nor could one be assigned pursuant to the aforementioned outstanding issues.

37. Pursuant to the foregoing actions and/or inactions, YP did not act in accordance with the Contract nor Section 328.07, Florida Statutes and the sale of the vessel without a certificate of title is a criminal act per 328.21, Florida Statutes. Such statutes prohibited YP from

---

[2] Vessels in excess of 79' must be admeasured to determine their gross tonnage. 46 CFR 175.05-15.

operating, using or storing the Vessel on open waters as there was no hull identification number for the Vessel and made the sale of the Vessel without a certificate of title a crime. [3]

38. Shortly after inspection, PRIDER notified FORMAN, and in turn, LEIGH and YP, that he wished to terminate the Contract.

39. Despite notification of termination, LEIGH and YP insisted that closing on the Vessel had occurred, regardless of the foregoing failures to satisfy the requirements of closing per paragraph 18 of the Contract and regardless of the fact that closing the sale of the Vessel would constitute a criminal act.

40. On or about May 12, 2021, WARTICOVSCHI emailed a subsequently executed Bill of Sale to PRIDER. A true and accurate copy of the Bill of Sale, which was not signed by PRIDER or a representative of SPIRIT is attached hereto as Exhibit "E".

41. As a result of the foregoing sequence of facts, SPIRIT filed a petition for arbitration against YP, LEIGH, NEW YACHTS, LLC, HARRY WARTICOVSCHI, and ROBERT FORMAN.

42. In the Award, the Arbitrator found in favor of YP and LEIGH, and against SPIRIT, making the following specific findings:

    a. The Closing on the Vessel occurred on May 6, 2021;

    b. The fact that the Vessel was not documented or registered did not prevent it from being sold;

    c. **Even if it was a misdemeanor under Florida law to transfer the Vessel because it was not registered or documented, the criminal act of transferring the Vessel would not prevent the transfer by sale from**

---

[3] However, the Purchase and Sale Agreement identified a false hull identification number, which was a valid hull identification number, just for a different vessel.

8

**occurring. Said another way, the Arbitrator found this contract for the consummation of a criminal act is valid and enforceable and the Arbitrator ordered the completion of the criminal act by ordering the purchase money to be released from the escrow agent**;

d. All claims asserted by SPIRIT against YP and LEIGH were denied and dismissed;

e. Ordering FORMAN to release the $220,000.00 purchase price to the order of YP;

f. Ordering SPIRIT to reimburse YP and LEIGH for $62,500.00 in attorneys fees;

g. Ordering SPIRIT to pay the administrative fees and expenses of the American Arbitration Association, totaling $19,215.00; and

h. Ordering SPIRIT to pay the compensation and expenses of the arbitrator totaling $21,675.00.

43. SPIRIT files this Motion to Vacate in response to the Award.

## MEMORANDUM OF LAW

I. **The Arbitration Award Must be Vacated Pursuant to 9 U.S.C. §10 (a)(4) Because the Arbitrator Clearly Exceeded his Powers by Mandating a Criminal Act.**

    a. *The Arbitration Agreement is only as enforceable as other contracts but not more so.*

The arbitrators' scope of power is ultimately derived from the parties' agreement. *Cat Charter, LLC v. Schurtenberger*, 646 F. 3d 836 (11th Cir. 2011). Arbitrators may exceed their power, pursuant to 9 U.S.C. §10 (a)(4) if they fail to comply with the mutually agreed-upon contractual provisions in an agreement to arbitrate. *Id. citng Szuts v. Dean Witter Reynolds, Inc.*,

931 F. 2d 830 (11th Cir. 1991). An arbitrator "may…exceed her authority by failing to provide an award in the form required by an arbitration agreement." *Id.* at 843. The FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989).

The "purpose of federal arbitration law is 'to make arbitration agreements as enforceable as other contracts, **but not more so.**" *American Postal Workers Union v. United States Postal Service*, 682 F. 2d 1280, 1286 (9th Cir. 1982). Ordinarily in contract interpretation, "giving reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." *In re FFS Data, Inc.,* 776 F. 3d 1299, 1304 (11th Cir. 2015); *see also* Restatement (Second) of Contracts §202, comment d (1980) ("where the whole can be read to give significance to each part, that reading is preferred.").

In the instant case, the Arbitrator overstepped his authority, acting outside the scope as allotted in the Contract, by consummating and mandating a crime. Specifically, the Arbitrator made a finding that a contract provided for the criminal transfer of the Vessel without a certificate of title in his Award, ordered the escrow agent to transmit SPIRIT's payment held in escrow for the criminal sale, and granted affirmative relief to the Defendants, where none was sought. Furthermore, the Award, if it is not vacated, mandates that SPIRIT use, operate or store the vessel on the open water, which is also a crime.

Paragraph 21 of the Contract states that "[a]rbitration shall be the sole and exclusive forum for resolving any dispute **relating to this Agreement** and neither party may resort to any court **except** to compel arbitration, **refer questions of law**, or confirm, vacate, modify, or enforce the arbitration award." (emphasis added). As addressed above, whether the Award is enforceable, in light of the Award's requirement of blatant statutory violations, is a question of law, appropriate,

even under the Contract to be referred to the courts, not the Arbitrator. Moreover, the Contract language does not imply, nor could it imply that an Award may entail criminal and/or illegal acts in violation of federal or state criminal statutes.

The Arbitrator cannot, by way of its Award, order a criminal act. But here, that is exactly what the Arbitrator did. SPIRIT raised the issues of the criminality of the transfer of the Vessel to the Arbitrator, but the Arbitrator glossed over the same.

Pursuant to Section 328.07,

> **[n]o person shall operate, use, or store** on the waters of this state a vessel the construction of which began after October 31, 1972, for which the department has issued a certificate of title or which is required by law to be registered, **unless the vessel displays the assigned hull identification number** affixed by the manufacturer as required by the United States Coast Guard or by the department for a homemade vessel or other vessel for which a hull identification number is not required….

(emphasis added). Fla. Stat. §§328.07(3)(b) (permitting seizure of a boat that does not have a hull identification number as contraband property and subjecting it to forfeiture.). Moreover, Section 328.05, Florida Statutes renders it,

> unlawful for any person, knowingly and with the intent to defraud, **to have in his or her possession**, **sell**, offer to sell, counterfeit, or supply a blank, forged, fictitious, counterfeit, stolen, or **fraudulently or unlawfully obtained**…**bill of sale**, or **other indicia of ownership of a vessel**. Any persons who violates any provision of this subsection is guilty of a felony to the third degree….

(emphasis added). Fla. Stat. 328.21 provides,

> A person who:
> (1) Except as otherwise provided for in this chapter, purports to sell or transfer a vessel for which a certificate of title is required without delivering to the purchaser or transferee thereof a certificate of title thereto which is duly assigned to the purchaser as provided in this chapter or who operates or uses in this state a vessel for which a certificate of title is required, without the certificate having been

>     obtained in accordance with this chapter, or upon which the certificate of title has been canceled;
>     (2) Fails to surrender any certificate of title, certificate of registration, or sticker upon cancellation of the same by the department and notice thereof as prescribed in this chapter;
>     (3) Fails to surrender the certificate of title to the department as provided in this chapter when the vessel has been destroyed, dismantled, or changed so that it is not the vessel described in the certificate of title; or
>     (4) **<u>Violates any of the other provisions of this chapter, or any lawful rule adopted under this chapter, is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083, for each offense.</u>**

(emphasis added).

Here the Award, enforcing the criminal closing on the Vessel, without a hull identification number, without a certificate of title, and under an improperly executed Bill of Sale, specifically with a fraudulent hull identification number of a sunken vessel, orders numerous criminal acts punishable as third-degree felonies or second-degree misdemeanors. Enforcement of the Award *prima facie* renders and forces SPIRIT to violate Sections 328.05 and 328.07, Florida Statutes, by way of knowing possession of the Vessel, and the relevant Bill of Sale, and improper hull identification number as included on the Bill of Sale. Enforcement of the Award *prima facie* consummates and compels the illegal act of transferring a Vessel without a certificate of title in violation of Section 328.21, Florida Statutes.

The Award exceeds the powers of the Arbitration Clause, mandating and condoning criminal conduct. Specifically, the Award found that the "fact that the vessel was not documented or registered did not prevent it from being sold[]" and "[e]**ven if it is a misdemeanor** under Florida law to "transfer" a vessel that was not registered or documented it would not prevent that transfer

by sale from occurring." (emphasis added). [4] In paragraph 5, the Award acknowledges the criminality and illegality of the Vessel transfer, and one paragraph later finds that a transfer did occur and was thereby enforceable, without reaching the merits of the criminal conduct issue in its analysis.

> Section 328.03, Florida Statutes requires that,
>
>> [e]ach Vessel that is **operated, used, or stored** on the waters of this state must be titled by this state pursuant to this chapter, unless it is…. A federally documented vessel…. A vessel from a country other than the United States temporarily used, operated, or stored on the waters of this state for a period that is not in excess of 90 days…. (emphasis added).

The Award does not find that the Vessel was a federally documented vessel. Moreover, the Award does not find that the Vessel, which entered Florida waters in or about January 2017, was in Florida waters for a period of less than ninety (90) days. However, despite these legal shortcomings, the Award imposes illegal statutory violations upon SPIRIT by way of transferring the Vessel to SPIRIT ownership without sufficient title as required by Florida Statutes. The completion of the sale is in and of itself criminal conduct, christened by the Arbitrator's Award and thereby requiring enforcement pursuant to confirmation by this Court.

> Section 328.21, Florida Statutes provides that,
>
>> A person who…. Except as otherwise provided for in this chapter, purports to sell or transfer a vessel for which a certificate of title is required without delivering to the purchaser or transferee thereof a certificate of title thereto which is duly assigned to the purchaser as provided in this chapter or who operates or uses in this state a vessel for which a certificate of title is required, without the certificate having been obtained in accordance with this chapter, or upon which the certificate of title has been cancelled…is guilty of a misdemeanor of the second degree….

---

[4] Notably, the Award neglected to mention that the fictitious hull number on the vessel rendered the sale a third-degree felony per Section 328.05, Florida Statutes.

Here, the Award finds for the transfer of a Vessel, without a proper certificate of title. Specifically, in paragraph 5 of the Award, the Arbitrator writes that "[t]he fact that the vessel was not documented or registered did not prevent it from being sold[]" in direct contradiction with the plain language of Section 328.21, Florida Statutes. For this reason, the Award sanctions a criminal act, insisting upon the transfer of the Vessel, regardless of the sufficiency of certificate of title.

The Award is *prima facie* improper because enforcement renders numerous criminal acts in the form of statutory misdemeanor violations and exceeds the power of the Arbitrator under the Arbitration Clause. Suppose the following scenario: An individual enters into an agreement to purchase a legal Rifle. Prior to purchase, the buyer uncovers that the Rifle has been modified and it is thereby criminal to possess, purchase, or sell. The buyer terminates the agreement based upon discovery of criminality of the sale. The seller and buyer dispute whether the sale closed, and an arbitration action ensues. After factual review, without reaching the merits of whether the Rifle was modified, the arbitrator finds that the agreement is enforceable and orders the buyer to pay $3,500.00 for the modified Rifle, take possession of the modified Rifle, and renders the agreement, together with the improper authenticity documents, enforceable. The instant case is directly akin to this hypothetical. It boggles the mind that an Arbitrator would compel a criminal act and enforce an illegal agreement.  Clearly the Arbitrator does not have the power to render SPIRIT guilty of a second-degree misdemeanor and require SPIRIT to further carry out criminal conduct by enforcing an agreement requiring SPIRIT to "purchase and possess the illegal Rifle." The Award expressly acknowledges that it may be criminal and illegal to store or transfer a vessel that is not registered or documented, but enforces possession and transfer, nonetheless.

**II.     The Arbitration Award Must be Vacated Pursuant to the Federal Arbitration Act Because the Arbitrator Clearly Exceeded his Powers by Mandating a Criminal Act and the Award was Premised on Matters for Which there was No Agreement to Arbitrate.**

"It is a general principle of contract law that courts will not enforce contracts requiring the performance of an illegal act." *American Postal Workers Union*, 682 F. 2d 1280 *citing Northwest Airlines, Inc. v Alaska Airlines, Inc.,* 351 F. 2d 253, 256 (9th Cir. 1965). An arbitration award requiring a party to violate the law cannot be enforced. *See Amalgamated Transit Union v. Aztec Bus Lines*, 654 F. 2d 642 (9th Cir. 1981) *American Postal Workers Union,* 682 F. 2d at 1286 (holding that "[w]e therefore conclude that the courts **cannot enforce an arbitrator's award if it requires the performance of an illegal act**." (emphasis added). Despite case law diminishing the scope of contractually modified grounds for vacatur of an arbitration award, the foregoing case law persists as a small caveat of untouched territory in the Eleventh Circuit.

The undersigned counsel is aware of the Supreme Court's holding in *Hall Street Associations, LLC*. In *Hall Street,* which broadly addressed the question of "whether statutory grounds for prompt vacatur and modification may be supplemented by contract" was presented to the Court. *Hall Street Associations, LLC v. Mattel,* 552 U.S. 576 (2008). While the Court held in favor of precluding contracted for grounds for vacatur or modification of an arbitration award outside the scope of those provided in 9 U.S.C. §10, it did so by adopting the Ninth Circuit's view, confining vacatur of an arbitration award to those grounds listed in 9 U.S.C. §§10 and 11. *Id.* Particularly, *Hall Street* examined and adopted the court's holding in *Kyocera Corp v. Prudential-Bache T Servs.*, a Ninth Circuit case holding that "private parties may not contractually impose their own standard on the courts."[5] *Id.*  Despite the holding in *Hall Street* and *Kyocera Corp.* prior

---

[5] Moreover, the decision in *Hall Street* based upon the holding in *Kyocera Corp.* did not preclude vacatur based upon a *manifest disregard for the* law. Despite *Hall Street*, Ninth Circuit case law based upon vacatur pursuant to a manifest disregard of law remains good law.

15

Ninth Circuit precedent, such as *American Postal Workers Union* remain good law because *Hall Street* does not address the issue of whether an arbitrator can compel an illegal or criminal act. *Id.; Kyocera Corp. v. Prudential-Bache T Servs.,* 341 F. 3d 987 (9th Cir. 2003). In fact, despite the Ninth Circuit origins of the Court's holding in *Hall Street*, subsequent Ninth Circuit case law has gone a step farther, concluding that "after Hall Street Associates, manifest disregard of the law remains a valid ground for vacatur" because it is "shorthand for statutory ground under the FAA, specifically 9 U.S.C. §10(a)(4)." *Comedy Club, Inc. v. Improv West Assocs.,*553 F.3d at 1290.

The Eleventh Circuit recognizes a circuit split following the Court's holding in *Hall Street. Frazier v. Citifnancial Corp., LLC,* 604 F. 3d 1313 (11th Cir. 2010). *Id.* (writing that while the Fifth Circuit has read *Hall Street* to prohibit non-statutory vacatur "[t]he Second and Ninth Circuits have taken a different approach, treating manifest disregard of the law not as an additional, independent non-statutory ground for vacatur, but instead as a judicial interpretation of the district court's power under §10(a)(4) to vacate an award where the arbitrator 'exceeded [his]powers'…."). However, similarly to *Hall Street* and *Kyocera Corp.*, **the Eleventh Circuit in *Frazier* does not address the issue of an arbitration award which mandates or condones a criminal or illegal act.  As such, the facts here are distinguishable from *Frazier and Hall Street* and *Frazier* and *Hall Street* are inapplicable to the issue at hand.**  Despite the foregoing, in *Aviles v. Charles Schwab & Co.,* this Court analyzed a claim for vacatur of an arbitration award, in part based upon violation of public policy. *Aviles v. Charles Schwab & Co.*, No. 09-80794-CIV-ZLOCH, 2010 U.S. Dist. LEXIS 35025 (S.D. Fla. Apr. 9, 2010). *Id.* at 21 (writing that "[w]hen considering a motion to vacate an arbitration award on the basis the award is…contrary to public policy, the reviewing court begins by looking to the arbitration award itself to determine if there is a rational basis for the award."). Regardless of express recognition of *Hall Street*, this Court

found that "[a]n arbitration award will be vacated on public policy grounds only if the award is violative of some explicit public policy…." and thereby analyzed the plaintiff's claims under that standard. *Id.* at 22. *Id.* (holding that the arbitration award would not be vacated, not because *Hall Street* precluded analysis of public policy violation, but instead because the record did not sufficiently support a violation of public policy grounds). Clearly, an arbitration award that condones and mandates a criminal act is a violation of public policy.

In *American Postal Workers Union,* the arbitrator awarded reinstatement despite a finding of illegal participation in a strike. *American Postal Workers Union,* 682 F. 2d 1280 (9th Cir. 1982). The court found that general principles of contract law prohibiting the court from enforcing the performance of criminal act to include the prohibition of confirming an arbitration award requiring a party to violate the law. *Id.* Here, the Court is presented with the same question as raised in *American Postal Workers Union.* As laid out in Section I above, the confirmation of the Award would mandate and condone SPIRIT's statutory violation rendering it guilty of multiple misdemeanors, thereby enforcing criminal and illegal acts. American Postal Workers Union is the most on point Circuit Court of Appeals decision discussing when the enforceability of an award when the arbitrator enforces a criminal act. The facts here raise the assertion from not a mere manifest disregard of law, but to enforcing and mandating criminal action. Surely this Court cannot condone nor confirm the enforcement of criminal activity. Therefore, this Court should find that confirmation of the Award, participating and condoning criminal activity, is inappropriate to the extent that it exceeds the power of the arbitrator, violates general contract principles, and public policy.

In addition to the above, the Arbitrator exceeded his scope of authority because he Ordered the escrow agent to release the $220,000 to YALE. YALE never made any demand for affirmative

relief and never filed a counterclaim. As such, YALE should not have been awarded and funds or damages for the alleged breach by SPIRIT. If YALE wished to receive any affirmative relief, including but not limited to payment of the funds held in escrow, then YALE was required to file a counterpetition and seek affirmative relief.

**III.    The Arbitration Award Must be Vacated Pursuant to Section 682.13, Florida Statutes Because the Arbitrator Clearly Exceeded his Powers by Mandating a Criminal Act and the Award was Premised on Matters for Which there was No Agreement to Arbitrate.**

"Section 682.13(1)(a) contains language almost identical to 9 U.S.C. § 10(a)(2002). This court may therefore look to federal law to interpret section 682.13(1)(a)." *Davenport v. Dimitrijevic*, 857 So. 2d (Fla. 4th DCA 2003). Whether interpreting under the Federal or Florida Arbitration Act the result is the same. Therefore, SPIRIT extends the analysis contained herein as it pertains to the consummation of criminal activity and exceeding the scope of authority pursuant to 9 U.S.C. §10 to Section 682.13(1)(a).

The Award is improper because the Arbitrator overstepped his authority in his Award, acting outside the scope of the arbitration clause in the Contract, consummating and ordering a criminal act, and granting affirmative relief where none was requested. "[T]here is no legal remedy for that which is illegal itself." *Spiro v. Highlands General Hospital*, 489 So.2d 802 (Fla. 2nd DCA 1986). "An arbitrator cannot order a party to perform an illegal act." *Party Yards, Inc. v. Templeton*, 751 So.2d 121 (Fla. 5th DCA 2000). An "arbitrator exceeds his or her power [] when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration." *Nash v. Fla. Atl. Univ. Bd. Of Trs.*, 213 So. 3 363, 367 (Fla. 4th DCA 2017). *Greco v. Carlton*, 793 So. 2d 1088 (Fla. 4th DCA 2001) (finding that the trial court erred in refusing a motion to modify or correct an arbitration where the arbitration award went beyond the matters submitted). Whether an arbitrator

exceeded his authority within the meaning of Section 682.13, Florida States, is an issue of law subject to de novo review. *Nash*, 213 So. 3d 363.

Section 682.13, Florida Statutes provides that,

> [u]pon motion of a party to an arbitration proceeding, the court shall **vacate an arbitration award** if… (a) the award was procured by corruption, fraud, or other undue means; (b)…an **arbitrator exceeded the arbitrator's powers**….

The undersigned counsel is aware of *Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc.*, 154 So.3d 115 (Fla. 2014) and its general holding that an arbitrator can make the legal determination of whether a contract is void for illegality. However, the case is distinguishable from the instant case in that here the Arbitrator did more than just determine whether the contract was void for illegality. Here, the Arbitrator ordered consummation of a criminal act. Here, the Arbitrator ordered the escrow agent to participate in a crime by ordering the escrow agent to release escrow funds for consummation of the illegal transfer of the Vessel. Here, the Arbitrator ordered SPIRIT to participate in a crime has it ordered SPIRIT to take possession of the Vessel without a hull number and without a certificate of title. Additionally, the Florida Supreme Court would have been aware of the holding in *Party Yards*, which held "[a]n arbitrator cannot order a party to perform an illegal act." *Party Yards* 751 So.2d at 123. Despite the Florida Supreme Court having knowledge of the holding in *Party Yards* the Florida Supreme Court didn't overrule *Party Yards*. Determining whether a contract is void for illegality is something completely different from mandating and compelling a party to engage in a criminal act. The Award should be vacated as exceeding the power of the Arbitrator as no Arbitrator is given the power to mandate or compel a party to engage in a criminal act. Additionally, the Award also exceeds the scope of the arbitrator's authority, awarding affirmative relief in the form of a $220,000.00 payment to YALE when YALE didn't file a counterpetition and didn't seek any affirmative relief.

## CONCLUSION

WHEREFORE, Plaintiff, SPIRIT, moves this Court to enter an Order vacating the Arbitrators' Award, award the Plaintiff their attorney's fees and costs for this Motion and grant any such further relief as this Court deems just and appropriate.

**COBB & GONZALEZ, P.A.**

By: _____
Nicholas J. Elder, Esq.
Florida Bar No. 27724
nelder@cobbgonzalez.com
4655 Salisbury Road, Suite 200
Jacksonville, FL 32256
Telephone: (904) 822-8001
mlohmann@cobbgonzalez.com
file@cobbgonzalez.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I CERTIFY that the foregoing document was electronically filed with the U.S. Clerk of Court on this 24th day of May, 2022 via CM/ECF and was served this day via E-Mail and USPS Priority Mail Express to:

Michael R. Karcher, Esq.
Karcher, Canning & Karcher
760 NE 7th Avenue
Dania Beach, FL  33004
mrk@ukandk.com
*Counsel for Alan Leigh and Yale Products, Inc.*

_____
Attorney