UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 22-60991-CIV-MORENO**

SPIRIT OF THE EAST, LLC, a Florida limited
liability company,

        Plaintiff,

vs.

YALE PRODUCTS, INC., a Florida for-profit
corporation, and ALAN LEIGH, an individual,

        Defendants.

_____/

## ORDER GRANTING MOTION TO CONFIRM ARBITRATION AWARD AND DENYING MOTION TO VACATE ARBITRATION AWARD

This case is about the sale of a boat that went sour. The parties submitted their dispute to

an arbitrator, and after, filed dueling motions in this Court to either confirm or vacate the arbitration

award. For the reasons discussed herein, the motion to confirm the arbitration award is

**GRANTED** and the motion to vacate the arbitration award is **DENIED**.

**I.    Background**

The boat in question is named the Spirit of the East, an eighty-seven-foot vessel built in

2006. Nathan Prider is the managing member of an entity fittingly titled Spirit of the East LLC.

On behalf of Spirit, he initiated negotiations to buy the vessel from Yale Products. Throughout

the process, he dealt with Alan Leigh, the sole officer and shareholder of Yale.

In April 2021, Spirit and Yale entered into a written Purchase Agreement for the transfer

of the vessel from Yale to Spirit in exchange for $220,000. The closing was set for May 10, 2021.

According to Spirit, the contract provided that closing was contingent upon Yale obtaining

documentation for the vessel in the United States, providing clear title, removing the "Malta

mortgage," and assisting Prider in preparing and moving the vessel to a new location. Paragraph 18 of the Agreement reflects that the sale is deemed closed when the buyer has received title documents from the seller. The Agreement also contained an arbitration clause. It said, in relevant part: "The parties shall refer to arbitration any dispute relating to this Agreement, including but not limited to, its interpretation, breach, or existence. . . . Arbitration shall be the sole and exclusive forum for resolving any dispute relating to this Agreement and neither party may resort to any court except to compel arbitration, refer questions of law, or confirm, vacate, modify, or enforce the arbitration award."

A few days before the closing, Prider did a "walk-through" of the vessel and discovered that: (1) it did not have a name on either of its sides; (2) it did not have a name on its stern; (3) it could not be identified by a name on its exterior; (4) it did not have a hull number on either side; and (5) it has suffered recent damage to its starboard side. Shortly after the walk-through, Prider informed the escrow agent, Robert Forman, and Leigh that he wished to terminate the contract. Yet Leigh and Yale insisted that the closing occur. On May 12, 2021, an individual named Harry Warticovschi (his relevance is not explained in the pleadings) emailed a bill of sale to Prider.

Spirit thus filed a petition for arbitration against Yale, Leigh, Warticovschi, Forman, and others. The arbitrator found in favor of Yale. He found that the closing occurred and that the vessel lacked documentation or registration did not prevent it from being sold. He also found that even if, as Spirit argued, it is a misdemeanor under Florida law to transfer a vessel without registration or documentation, this did not prevent the transfer from occurring. The arbitrator thus ordered Forman to release the $220,000 purchase price to Yale. He also ordered Spirit to pay attorney's fees totaling $62,500, administrative fees related to the arbitration of $19,215, and compensation to the arbitrator totaling $21,675.

2

Spirit then filed this motion to vacate the arbitration award.

## II.      Legal Standard

This case is governed by the Federal Arbitration Act.   "On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the Act.  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).  Section 10 provides four instances in which an arbitration award may be *vacated*: (1) it was procured by corruption, fraud, or undue means, (2) there was partiality or corruption of the arbitrators, (3) the arbitrators were guilty of misconduct, such as by refusing to postpone the hearing or refusing to hear evidence material to the case, or (4) the arbitrators exceeded their powers, or bungled their duties so badly that a mutual, final, and definite award as not made.  9 U.S.C. § 10.  Section 11 provides the three instances in which an arbitration award may be *modified*: (1) there was a material miscalculation of figures or mistake in the description of something referred to in the award, (2) the arbitrators awarded upon a matter not submitted to them that does not affect the merits of the matter submitted, or (3) the award is imperfect in a matter of form not affecting the merits of the controversy.  9 U.S.C. § 11.

As the Supreme Court has observed, these narrow circumstances admit of no expansion or flexibility.  *Hall Street*, 552 U.S. at 587.  They embody a national policy favoring arbitration "with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."  *Id.* at 588.  Taking the Supreme Court's cues, the Eleventh Circuit has explained that the statutory grounds provided in sections 10 and 11 are the exclusive grounds for vacating or modifying an arbitration award—period, end of story.  *See Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010).  In light of the Federal Arbitration Act's "heavy presumption

3

in favor of confirming arbitration awards," a district court's confirmation proceedings are "usually routine or summary." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002).

The single question for the Court, then, is whether Spirit has shown the existence of one of the statutory grounds for vacatur. Spirit only asserts § 10(a)(4) as a ground. Courts in the Eleventh Circuit interpret that subsection "very narrowly." *Torres v. Morgan Stanley Smith Barney, LLC*, 839 F. App'x 328, 333 (11th Cir. 2020). "Only if the arbitrator acts outside the scope of his contractually delegated authority -- issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract -- may a court overturn his determination." *Id.* (simplified).

## III. Discussion

Spirit raises three main arguments in support of its motion to vacate. First, Spirit argues that the arbitration award must be vacated pursuant to § 10(a)(4) because the arbitrator exceeded his power by "mandating a criminal act." Second, Spirit argues that the arbitration award must be vacated because it was premised on matters for which there was no agreement to arbitrate and because the arbitrator awarded relief to Yale although Yale did not request any. Third, Spirit makes the same argument about the arbitrator exceeding his powers, but under the Florida Arbitration Code.

### A. Illegality

Begin with Spirit's first argument. Spirit says the arbitrator "overstepped his authority" by "consummating and mandating a crime." In other words, the transfer of the Vessel is unlawful, but the arbitrator ordered the release of the escrow funds to Yale for the Vessel, thereby effectuating that unlawful transfer. Spirit looks to several Florida statutes for support: the first is § 328.07(b)(3), which provides that no one shall operate, use, or store a vessel in Florida waters

4

without a hull identification number; the second is § 328.05, which provides that it is unlawful to knowingly supply a fraudulent or unlawfully obtained bill of sale; the third is § 328.21, which makes it unlawful to sell or transfer a vessel without a certificate of title when one is required. But the merit of these claims is not quite in issue: instead, the question is whether an arbitrator exceeds his authority by, in the view of a party, construing the contract to require illegal activity. The relevant precedent answers that question in the negative.

In *Frazier v. CitiFinancial Corporation, LLC*, the Eleventh Circuit had occasion to consider the Supreme Court's interpretation of the statutory bases for vacating or modifying an arbitration award. 604 F.3d 1313 (11th Cir. 2010). The plaintiff in *Frazier* argued that the arbitrator's decision was contrary to public policy and made in manifest disregard of the law. *Id.* at 1321. Reviewing the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the panel explained that §§ 10 and 11 provide the "exclusive" grounds for vacating or modifying an arbitration award. *Id.* at 1322; 552 U.S. 576 (2008). Thereby, they establish "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Frazier*, 604 F.3d at 1322 (simplified). Expanding these statutory grounds would "open[] the door to full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Hall Street*, 552 U.S. at 588. The Eleventh Circuit accordingly read *Hall Street* to preclude not just contractually agreed-upon expansions of the statutory bases in §§ 10 and 11, but judicially created expansions as well. *See Frazier*, 604 F.3d at 1322-24. The conclusion is that a plaintiff seeking to vacate an arbitration award must succeed on a statutory ground; so the plaintiff's arguments about public policy and "manifest disregard of the law" were no good.

Spirit cites the "general principle of contract law" that "courts will not enforce contracts requiring the performance of an illegal act." (D.E. 1 at 15). But general contract principles are exactly the kind of judicially created doctrines that the Eleventh Circuit rejected as a ground for vacatur in *Frazier*. So Spirit seeks to distinguish *Frazier* by re-interpreting its holding: it claims that *Frazier* doesn't control here because it did "not address the issue of an arbitration award which mandates or condones a criminal or illegal act." This reading of *Frazier*, however, is unreasonably narrow. The panel in that case announced the Circuit's agreement with the Fifth Circuit, that the effect of *Hall Street* prohibits "*all* extra-statutory grounds for vacatur, whether judicially-created or contractually agreed upon." *Frazier*, 604 F.3d at 1323-24 (emphasis added).[1]

Perhaps sensing that its reading of *Frazier* is improper, Spirit tries to shoehorn its void-for-illegality argument into a statutory basis: § 10(a)(4). This theory takes a non-statutory argument and repackages it as a statutory one. If accepted, it would mean that an arbitrator would exceed his powers each time he enforced a contract that one of the parties thought was void for illegality; it's not clear why this would not devolve into arguments that an arbitrator exceeds his power each time he reaches an erroneous legal conclusion when interpreting a contract.[2] Yet this is precisely the Pandora's box of "full-bore legal and evidentiary appeals" that the Supreme Court has repudiated. *Hall Street*, 552 U.S. at 588. It is true that the Eleventh Circuit formerly recognized

---

[1] Throughout its briefs, Spirit supports its arguments with precedents from the Ninth Circuit. But the Eleventh Circuit, which this Court is obliged to follow, has already acknowledged the circuit split between the Ninth and Fifth and opted to join the Fifth.

[2] The arbitrator's final award shows the problem with Spirit's theory. In paragraph five, the arbitrator details his conclusions on the parties' legal arguments. He discusses the Florida Uniform Commercial Code, the hull identification number and classification of the vessel, the history of the vessel, the bill of sale, and other details of the transaction. He then explains: "*Even if it is a misdemeanor* under Florida Law to 'transfer' a vessel that was not registered or documented it would not prevent that transfer by sale from occurring." (emphasis added). In other words, the arbitrator concluded that the transaction was *not* unlawful, but explained why Spirit's claims failed even if its Florida law arguments were correct. Spirit simply disagrees with that conclusion and disguises its complaints as arguments about the arbitrator's abuse of authority.

non-statutory grounds like public policy as a basis for vacatur. *See, e.g., Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775 (11th Cir. 1993). But the *Frazier* court did away with those precedents when it described that *Hall Street* "casts serious doubt on their legitimacy" and then went on to hold that §§ 10 and 11 provide the exclusive grounds for disturbing an arbitration award. 604 F.3d at 1322, 1324.[3]

Further, Spirit has provided no post-*Frazier* controlling authority which suggests that an arbitrator exceeds their power by enforcing a purportedly illegal contract.[4] That is probably because, again, such a holding would deliberately circumvent the decisions in *Frazier* and *Hall Street*. Courts may not countenance arguments about the legal merits of an arbitrator's decision just because they are ornamented in Federal Arbitration Act lingo. The Eleventh Circuit's decision in *White Springs Agricultural Chemicals v. Glawson Investments Corp.* demonstrates this perfectly. 660 F.3d 1277 (11th Cir. 2011). The plaintiff argued that the arbitration panel exceeded its authority by granting relief that Florida law did not permit. *See id.* at 1282-83. The court responded: "These points on appeal essentially involve the same argument: the panel exceeded its powers by acting contrary to the law. We cannot, however, review the panel's award for underlying legal error. Even though [the plaintiff] presents its argument in terms of the [Federal

---

[3] Other judges in this district have acknowledged the same. *Battles v. Am. Van Lines, Inc.*, 2016 WL 1258597, at *4 n.5 (S.D. Fla. Mar. 31, 2016); *Pochat v. Lynch*, 2013 WL 4496548, at *8 (S.D. Fla. Aug. 22, 2013).

[4] Spirit claims that "despite" *Frazier*, the district court in *Aviles v. Charles Schwab & Co.* said an arbitration award may be vacated if the underlying contract is against public policy. 2010 WL 1433369, at *8 (S.D. Fla. Apr. 9, 2010). The district court in *Aviles* did not reach that conclusion in spite of *Frazier*—rather, the district court said that before *Frazier* was decided. Indeed, the Eleventh Circuit panel that affirmed the district court's confirmation of the arbitration award cited *Frazier* and explained that the statutory grounds for vacating an award set forth in the Federal Arbitration Act are exclusive. *See Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 827 (11th Cir. 2011).

7

Arbitration Act], it asks us to do what we may not—look to the legal merits of the underlying award." So too here. The arbitrator did not exceed his authority.[5]

### B.      Scope of the Arbitration

Spirit next argues that the arbitrator exceeded the scope of his authority because the award was premised on "matters for which there was no agreement to arbitrate." This is because, according to Spirit, the arbitrator ordered the escrow agent to release the 220,000 dollars to Yale, but Yale never made any demand for affirmative relief and never filed a counterclaim. In Spirit's view, the arbitrator ruled on "issues not presented" in or "not pertinent to the resolution" of Spirit's petition. These arguments are not persuasive.

"Because arbitrators derive their powers from the parties' agreement, we look to the terms of the governing arbitration clause to determine the powers of the arbitration panel." *White Springs Agric. Chemicals, Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1281 (11th Cir. 2011) (simplified). First, the arbitration provision in the Purchase Agreement unambiguously reaches this dispute. It provides: "The parties shall refer to arbitration any dispute relating to this Agreement, including but not limited to, its interpretation, breach, or existence." The questions raised by Spirit's arguments—whether the Purchase Agreement is void and if not whether any party is in breach— fall clearly within the ambit of this language. Further, because Spirit does not attack the existence of the Agreement or the validity of the arbitration provision itself, but only the entire Agreement's validity, it is entirely appropriate that the arbitrator would entertain Spirit's arguments about the Agreement. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1312 n.12 (11th Cir. 2017).

---

[5] Spirit also presents this argument under the Florida Arbitration Code. This case is controlled by the Federal Arbitration Act. *See Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014); (D.E. 1 ¶¶ 14-15). But even if the case were controlled by the Florida Arbitration Code, the result is the same. *See Visiting Nurse Ass'n of Fla., Inc. v. Jupiter Med. Ctr., Inc.*, 154 So. 3d 1115, 1133-38 (Fla. 2014).

Second, as Yale explains, the arbitrator did what Spirit asked it to do and what the parties had previously agreed it would do: determine the parties' rights and obligations with respect to the Purchase Agreement. As a part of that determination, the parties submitted pleadings, testimony, and evidence. In addition, the arbitrator held a two-day hearing. This is made clear in the arbitrator's final award, in which he explains the respective positions of each party and the relief they sought. He explains that Yale asked for the "dismissal of all claims in the arbitration, an order to [the escrow agent] to release the $220,000 from escrow and to pay that sum to [Yale], and reimbursement of their legal expenses and costs of arbitration." So it does not appear to be the case that the arbitrator, on his own accord, made rulings detached from the central dispute in this case. Nor does Spirit claim that the arbitrator manufactured or misrepresented this request.

Third, Spirit does not cite any authority for the proposition that an arbitrator exceeds his authority by announcing the respective rights of parties under a contract when only one party petitioned for the arbitration. Once the general subject matter is submitted to the arbitrator, it is not the case that all parties are required to submit an additional petition to obtain relief. *Cf. Rosati v. Bekhor*, 167 F. Supp. 2d 1340, 1345 (M.D. Fla. 2001) (once a general issue is submitted the arbitrator may consider more specific issues not submitted). More fundamentally, it is hard to comprehend how the arbitrator, empowered by the parties to resolve "any dispute relating" to "interpretation" and "breach" of the Agreement, exceeded his authority by finding Spirit in breach and ordering its performance. This can hardly be characterized as the arbitrator "dispens[ing] his own brand of industrial justice." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).

9

## IV.   Conclusion

Spirit has not shown that any of the exclusive statutory bases for vacating or modifying an arbitration award are present in this case.  As a result, Spirit's motion to vacate the arbitration award, **(D.E. 1)**, is denied and Yale's motion to confirm the arbitration award, **(D.E. 13)**, is granted.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ /5 _____ of August 2022.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record